Town of MANCHESTER *vs.* Town of RUPERT.

BENNINGTON,
*February,*
1834.

The wife of a minor son is not of the *family* of the father, to the purposes of the 8th rule of the act of 1817, relating to settlements;—the father not being bound to support her. A debtor in prison, or within the liberties, is a *transient* person, within the eleventh section of the pauper act, and the town where the prison is situate may, if he become chargeable, recover the expense of his support from the town where he is settled, without an order of removal.

This was an action of *assumpsit.* Plea, non-assumpsit.

On trial before the court by agreement, it appeared in evidence that Thomas Jones was a citizen of, and had a legal residence in the town of Dorset, prior to January, 1818.—That in the month of January, 1818, the said Thomas Jones and his family removed to the town of Rupert, and resided there until he was committed to jail, as is hereinafter stated; and his family resided in Rupert until August last.—That on the 30th day of July, 1826, Orange Jones, then a minor son of said Thomas Jones, was lawfully married to Sally Perry.—That in the month of March, 1827, the said Sarah, wife of said Orange, applied to the overseers of the poor of the town of Rupert for support, who refused or neglected—who applied to the overseers of Dorset, who received the said Sarah and supported her about ten weeks at the expense of the town of Dorset, in virtue of the supposed residence of the said Thomas—the said Thomas having then absconded.—That about the last of April, 1827, the said Orange became of age.—That in the year 1832 the said Thomas Jones was brought from the town of Rupert and committed to the jail in Manchester by virtue of an execution, and was there supported by the said town of Manchester to the amount claimed in this suit.—That no notice was given in writing to the overseers of Rupert that Manchester was supporting said Thomas, but notice was given by *parol* to one of the select men of Rupert.—That no inquest was had, or order of removal was had upon the said Thomas while confined at said Manchester.

The court rendered judgment for the plaintiff to recover their damages, being the amount they paid for the support of said Jones while in jail; to which decision of the court the defendant made his exception, which was allowed and certified.

*Bennet for plaintiff.*—1. Thomas Jones gained a legal settlement in Rupert under the eighth head of the first section of the act of 1817.—p. 381.

BENNINGTON,
February,
1834.

Manchester
vs.
Rupert.

It appears from the case, that prior to January, 1818, he had his legal settlement in Dorset, and that he and his family then removed to Rupert, and there resided till he was committed to jail in 1832, supporting himself and family.

Because the town of Dorset supported the wife of a minor son of Thomas Jones in 1807, would not prevent Thomas Jones from gaining a settlement in Rupert.

Thomas Jones, if of sufficient ability, was not liable for the support of the wife of Orange Jones, though a minor son, under the ninth section of the act relating to a legal settlement. See p. 372. 1 Strange, 190, *Rix* vs. *Alexander*. 2 Strange, 955, *Rix* vs. *Dimson*. 4 Term. R. 118, *Tubb* vs. *Harrison*.

No pretence in this case that even the son after his marriage remained a part of his father's family; and by his marriage he became emancipated.

2. This action is brought by virtue of the eleventh section of the act—p. 372.

Jones was shown to be unable to support himself, and there can be no doubt the *spirit* of the act embraces a case of this kind.—Bray. Rep. 176, *Pawlet* vs. *Rutland*. 5 Mass. Rep. 246, *Sayard* vs. *Alford*.

*Sargeant for defendant.*—Thomas Jones the pauper had a legal residence in Dorset, January, 1818. Has that residence been changed?

By the proviso to the repealing act of 1823, no residence commencing prior to that time could be taken into the account towards gaining a settlement in Rupert.

Had Jones the pauper, since October, 1823, resided in Rupert, supporting himself and family without expense to either town, so as to bring himself within the eighth rule of the first section of the act of 1817?

The case shows that the wife of Jones' minor son was supported by the town of Dorset in March, 1827.

On the part of Rupert we insist, that the wife of a minor son is a branch of the family which the pauper was bound to support.

It is said that marriage emancipates the child from the father's service.

Although this may be a correct rule so far as the relation of master and servant is considered between the parent and his minor child, yet it does not follow that the father is consequently

released from the legal liability to support the child. As to what constitutes a man's family, within the spirit of the act of 1817, seems unsettled. What more safe rule can be adopted to ascertain the intent of the legislature, than to say, his family shall consist of those whom they have before said he shall be bound to support? Taking this rule we are led to the statute of 1797, where we find a man bound to support his parents and grand-parents, children and grand-children. If the husband and wife are to be legally considered one person, then is the father as much bound to provide for and maintain the wife of the minor son, as the son himself or their issue.

2. The defendant insists, that by the statute of 1797, sec. 3 & 4, (Rev. Stat. 370) the plaintiff was bound to hold an inquest by two justices, to ascertain the residence of the pauper, and that an order should be made to remove.

In case the order could not be complied with, the fourth section provides a remedy, and requires that the town chargeable should have fifteen days notice before the inhabitants shall be exposed to a suit.

Although the eleventh section is silent as to inquest and notice, yet the whole statute must be taken together to ascertain the proper construction. Swift's Dig. 11, 12.

A pauper may be confined in jail by virtue of an execution, certified (as in the present case) to be on a tortious judgment for a small amount. If the town of his residence had notice, its inhabitants might procure his release by payment of a trifling amount; whereas, without notice an expense to the amount of hundreds might be accumulating against them without their knowledge.

It is believed a construction leading to consequences thus disastrous will not be readily adopted.

The opinion of the court was pronounced by

PHELPS, J.—It is admitted that prior to January, 1818, the pauper had his legal settlement in the town of Dorset. The case finds, that in January, 1818, he removed into Rupert, where his residence has been ever since, except his having been confined in the jail at Manchester, as stated in the case. Here is a continuous residence of 14 years in the town of Rupert, more than seven of which was after the repeal of the proviso to rule 8th of the law of 1817. (Rev. Laws, p. 382.) That proviso was repealed in Nov. 1823. By that rule then,

he acquired a settlement in Rupert, unless he is prevented by the circumstance of his son's wife becoming chargeable, in the mean time, to the town of Dorset. The rule requires, in order to gaining a settlement by seven years residence, that the pauper shall, during such residence, support himself and family. But we are of opinion, that the son's wife was not one of his family, within the meaning of this statute. The term family, as here used, includes those only whom the pauper is under legal obligation to support. The statute requiring persons to support poor relations, relates to blood relations only, and not to relations by affinity. A man is not bound to support the children of his wife by a former husband. The wife of the pauper's son is in the same situation. The pauper is therefore legally settled in Rupert.

As to the order of removal, we are of opinion that none was necessary. The pauper falls within the scope of the 11th section of the pauper act, as a transient person, and not within the 4th section. It was long ago held, that a person committed to jail upon process was to be considered, to the purpose of the poor laws, as a transient person. See Brayton, 176. The same point arose in *St. Albans* vs. *Huntington,* in Franklin county, this present circuit ; and we are not disposed to disturb the rule as laid down in Brayton. It is a mere question of practice, and the only importance attached to it, consists in its being at rest. We are all agreed in recognizing the rule as there laid down.

Judgment of the county court affirmed.